UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN SHOOTING CENTER, INC., a California Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>SECFOR INTERNATIONAL, et al.,<br><br>    Defendants.<br>_____<br>KEIKO ARROYO and PATRICK SWEENEY, etc.,<br><br>    Counter-Claimants,<br><br>v.<br><br>AMERICAN SHOOTING CENTER, INC., et al.<br><br>    Counter-Defendants. | Case No. 13-CV-1847-BTM (JMA)<br><br>**ORDER ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE**<br>**[Doc. No. 57]** |

Presently before the Court is a Joint Motion for Determination of Discovery Dispute ("Joint Motion") in which Defendant/Counter-Claimant Patrick Sweeney ("Sweeney") seeks an order compelling Plaintiff/Counter-Defendant American Shooting Center, Inc. ("ASC") to further respond to

eight (8) document requests. (Doc. No. 57.)

One of the key issues in this litigation, as framed by the parties, is the scope of Sweeney's employment with ASC. ASC contends the scope of Sweeney's employment included developing and managing security training course offerings, which ASC copyrighted. (Joint Motion at 11.) ASC eventually terminated Sweeney for misappropriating ASC's corporate opportunities and intellectual property. (Id.) Sweeney counters that he was hired for the limited purpose of obtaining and maintaining government contracts and training government employees on certain premises owned by ASC. (Id. at 1.) He states he was hired by ASC with the understanding that he could pursue his own separate and independent businesses providing security protection to civilians, and teaching courses in executive and/or civilian protection for non-governmental organizations, and that ASC did not teach courses to civilians. (Id.)

Bearing the parties' above positions in mind, the Court now turns to the document requests at issue and, for the reasons set forth below, **ORDERS** as follows:

1. Request No. 3

Sweeney requests an order compelling ASC to produce documents responsive to Request No. 3, which seeks all documents relating to any contracts or subcontracts between ASC and Blackwater. Sweeney argues that the documents will show his work with ASC pertained only to obtaining and keeping government contracts. (Joint Motion at 3-4.) While the request is overbroad as phrased, the Court finds that contracts between ASC and Blackwater that Sweeney worked on during his employment with ASC, as well as any documents describing the work Sweeney performed in relation to these contracts, are relevant. Documents reflecting the scope of Sweeney's employment with ASC are relevant irrespective of whether

2

13cv1847

eight (8) document requests. (Doc. No. 57.)

One of the key issues in this litigation, as framed by the parties, is the scope of Sweeney's employment with ASC. ASC contends the scope of Sweeney's employment included developing and managing security training course offerings, which ASC copyrighted. (Joint Motion at 11.) ASC eventually terminated Sweeney for misappropriating ASC's corporate opportunities and intellectual property. (Id.) Sweeney counters that he was hired for the limited purpose of obtaining and maintaining government contracts and training government employees on certain premises owned by ASC. (Id. at 1.) He states he was hired by ASC with the understanding that he could pursue his own separate and independent businesses providing security protection to civilians, and teaching courses in executive and/or civilian protection for non-governmental organizations, and that ASC did not teach courses to civilians. (Id.)

Bearing the parties' above positions in mind, the Court now turns to the document requests at issue and, for the reasons set forth below, **ORDERS** as follows:

1. Request No. 3

Sweeney requests an order compelling ASC to produce documents responsive to Request No. 3, which seeks all documents relating to any contracts or subcontracts between ASC and Blackwater. Sweeney argues that the documents will show his work with ASC pertained only to obtaining and keeping government contracts. (Joint Motion at 3-4.) While the request is overbroad as phrased, the Court finds that contracts between ASC and Blackwater that Sweeney worked on during his employment with ASC, as well as any documents describing the work Sweeney performed in relation to these contracts, are relevant. Documents reflecting the scope of Sweeney's employment with ASC are relevant irrespective of whether

Sweeney's Second Amended Counterclaim mentions Blackwater. (See Joint Motion at 13.)

Accordingly, Sweeney's request for an order compelling a response to Request for Production No. 3 is **GRANTED IN PART**. On or before January 27, 2015, ASC shall produce all contracts or subcontracts between it and Blackwater that Sweeney worked on during his employment with ASC, as well as any documents describing the work he performed in connection with these contracts or subcontracts. Because the ASC-Blackwater contracts are subject to non-disclosure agreements and confidentiality provisions (see Joint Motion at 13; Halcon Decl. ¶ 2), these documents shall be produced pursuant to the protective order previously entered in this case.

2. Request No. 17

Request No. 17 seeks "all corporate formation and operation documents" for ASC including, but not limited to, "articles of incorporation, bylaws, corporate minutes, and share certificates." The Court finds the scope of the information sought is of questionable relevance and overbroad given the needs of the case. Further, although the request seeks multiple types of documents, Sweeney has only provided an explanation as to why he believes the corporate minutes are relevant. (Joint Motion at 4-5.) Having considered these arguments, the Court finds that corporate minutes could contain information relevant to the claims and defenses in this case. Although ASC's President and majority shareholder, Marc Halcon, attests that the corporate minutes do not include "in-depth discussions of corporate strategy or operations" (see Halcon Decl., ¶ 3), this does not mean that relevant information may not still be contained therein.

Sweeney's request for an order is **GRANTED IN PART**. ASC shall produce all corporate minutes reflecting any discussions relating to either

(1) the scope of Sweeney's employment or (2) the planning or provision of civilian and/or executive protection training courses by ASC, on or before <u>January 27, 2015</u>.  If no such documents exist, ASC must serve a supplemental response reflecting this fact on or before the same date. Sweeney's request for an order compelling the production of any additional documents under this request is **DENIED** on the basis that the scope of the remainder of the information sought is of questionable relevance and overbroad.  Additionally, the Court agrees with ASC's position that discovery of alter ego issues is premature until a ruling has been issued on ASC's motion to dismiss the second amended counterclaim.  (Joint Motion at 14-15; Doc. No. 51.)

    3.    <u>Request No. 45</u>

Sweeney's request is **DENIED** as the information he seeks–documents reflecting all communications between ASC and the United States Department of Justice's Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF")–is, at best, only marginally relevant to the claims and defenses in this case, the burden or expense of the proposed discovery outweighs its likely benefit (<u>see</u> Fed. R. Civ. P. 26(b)(2)(C)(iii)), and there are better sources of the information sought (<u>see</u> Fed. R. Civ. P. 26(b)(2)(C)(i)).

To elaborate further, Sweeney argues that records relating to ASC's dealings with ATF are important to show that ASC never mentioned "teaching executive protection to civilians" in any of its applications, licenses, or correspondence with ATF.  (Joint Motion at 6 & McGahey Decl., ¶ 5.)  The Court believes ASC's response to "Describe Specific Activity Applicant is Engaged in, or Intends to Engage in, Which Requires a Federal Firearms License" in an Application for Federal Firearms License would have only marginal bearing, at best, on the issues of the scope of

ASC's business, whether ASC provided executive protection training, or the scope of Sweeney's employment (see McGahey Decl., ¶ 5, referencing Ex. A to Wright Decl.). The Court wholeheartedly disagrees with Sweeney that any of the other information reflected on a federal firearms license application (see McGahey Decl., ¶ 5) bears any relevance to the issues in this case.

There would appear to be better sources for the information sought by Sweeney. For example, during the parties' meet and confer efforts, ASC agreed to produce documents showing the extent and scope of courses it offered during the time periods relevant to the issues in this case. (Wright Decl., ¶ 3.) These documents will surely have greater bearing on the extent of training offered by ASC than the information sought in Request No. 45. For all the foregoing reasons, Sweeney's request for an order compelling a response to Request for Production No. 45 by ASC is **DENIED**. If it has not already done so, ASC shall immediately produce the documents it agreed to produce, described above.

    4.    Request No. 46

This request seeks copies of all of ASC's federal and state governmental and business licenses, including those pertaining to firearms, for the same reason described above: to show that ASC did not teach courses in executive protection to civilians. (Joint Motion at 6.) ASC has agreed to produce its certifications and licenses authorizing it to conduct firearms training, as well as documents showing the extent and scope of courses it offered during the time periods. For the same reasons discussed with respect to Request No. 45, no further production in response to this request is required by ASC, and to the extent Sweeney seeks to compel any further response, his request is **DENIED**.

### 5. Request Nos. 48-50

In these requests, Sweeney seeks all documents, both electronic and written, reflecting communications between ASC and Dave Bridgman (Request No. 48), William (Bill) Desy (Request No. 49), and any person listed as a witness in ASC's initial Fed. R. Civ. P. 26 disclosures (Request No. 50), on the bases that these are important witnesses to ASC, that Sweeney is entitled to "find out what [ASC] and these witnesses have been communicating and conspiring about" with respect to him and the other defendants, and because Bridgman and Desy were employees of ASC and thus it is "important to see how their communications with [ASC] differed from [ASC's communications] with Sweeney." (Joint Motion at 7-9.) ASC clarifies that Bridgman worked as an employee and then as an independent contractor in ASC training programs, and that Desy has been, and continues to be, an independent contractor in ASC training programs. (Id. at 18.)

The Court finds the requests, as phrased, are overbroad and seek information that is not relevant to any of the claims or defenses in this case. Sweeney is not entitled to communications between ASC and its witnesses merely because the individuals have been identified as witnesses. This is not the proper basis for discovery. However, Sweeney is entitled to communications, if any, between ASC and these witnesses that pertain to the scope of Sweeney's employment with ASC, as well as any other communications about Sweeney that are relevant to the claims or defenses in this action. Although ASC claims it would have to sort through "eight years worth" of written documents and electronically stored information ("ESI") to produce the documents sought, it has provided no information supporting any assertion that the burden or expense of the discovery outweighs its likely benefit (see Fed. R. Civ. P. 16(b)(2)(C)(iii)). ASC's

related argument that to produce the documents it unilaterally determines to be relevant "runs afoul" of the attorney work product rule is completely unavailing, as this is the very manner in which federal discovery works. That is, documents are produced in discovery after having been reviewed by counsel to determine what is relevant and what is not.

Sweeney's request for an order compelling discovery in response to Request Nos. 48-50 is **GRANTED IN PART**. On or before January 27, 2015, ASC shall produce any documents (including ESI) reflecting non-privileged communications, if any, between it and Bridgman, Desy, and the witnesses listed in its Fed. R. Civ. P. 26 initial disclosures that pertain to the scope of Sweeney's employment with ASC, or any other communications about Sweeney that are relevant to the claims or defenses in this action.

6. Request No. 71

Sweeney's request for an order compelling ASC to produce documents responsive to Request No. 71, namely ASC's payroll records from January 1, 2002 forward, is **DENIED**. The Court agrees with ASC's argument that "the amounts paid to ASC's other employees or independent contractors have no tendency in law or fact to show whether Sweeney was performing activities in the course and scope of his employment" (Joint Motion at 19), particularly considering the privacy rights of the affected individuals. Therefore, Sweeney's request for an order compelling a response to Request for Production No. 71 by ASC is **DENIED**.

**IT IS SO ORDERED.**

DATED: January 12, 2015

Jan M. Adler
U.S. Magistrate Judge

7

13cv1847