# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN SHOOTING CENTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> SECFOR INTERNATIONAL, et al., <br><br> Defendants. | Case No. 13cv1847 BTM(JMA) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM AND GRANTING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** |
| KEIKO ARROYO and PATRICK SWEENEY aka RICK SWEENEY, <br><br> Counter-Claimants, <br><br> v. <br><br> AMERICAN SHOOTING CENTER, INC., et al. <br><br> Counter-Defendants. | |

Counterdefendants American Shooting Center, Inc., the Recce Group, Inc., and Marc Halcon have filed a motion to dismiss the Second Amended Counterclaim. American Shooting Center, Inc., and the Recce Group, Inc., have also filed a motion for leave to file an Amended Complaint. For the reasons discussed below, the motion to dismiss is **GRANTED IN PART** and

**DENIED IN PART**, and the motion for leave to amend the Complaint is **GRANTED**.

## I. BACKGROUND

This dispute concerns videos and other course materials used by Keiko Arroyo and Patrick Sweeney in providing high threat protection training, including a GI-Bill-funded protection training class at MiraCosta College.

Plaintiff American Shooting Center, Inc. ("ASC"), is in the business of providing specialty-training courses for security, medical procedures and protection, among other things. (Compl. ¶ 22.) Arroyo was an employee of ASC from October of 2002 to February 2005. (Compl. ¶ 23.) Sweeney worked for ASC from September 23, 2002 to April 13, 2004, and was hired again as a full-time employee on or about September 20, 2006. (Compl. ¶ 24.)

ASC alleges that as part of his work duties, Sweeney was to prepare training courses and training procedures for use by ASC. (Compl. ¶ 25.) The courses included videos and photographs of training and various security and medical scenarios, as well as materials for class instruction. (Id.) ASC explains that it terminated Sweeney in October of 2012, after ASC learned that Sweeney was working with Arroyo in a competing business to provide training courses using ASC's videos, photographs, and courses without ASC's knowledge. (Compl. ¶¶ 30-31.) According to ASC, Sweeney had been operating a competing business against ASC since 2007 while receiving compensation from ASC in the approximate amount of $75,000 per year. (Compl. ¶ 36.)

In its Complaint, ASC asserts claims for: (1) copyright infringement; (2) secondary infringement of copyright; (3) unfair competition under California common law; (4) violation of Cal Bus. & Prof Code § 17200; (5) tortious interference with contractual relations; (6) intentional interference with

prospective economic relations; (7) negligent interference with prospective economic relations; (8) unjust enrichment; (9) fraud; (10) violation of Cal. Penal Code § 496; (11) declaratory judgment; and (12) request for preliminary injunction.

Arroyo and Sweeney claim that Sweeney was hired by ASC/Marc Halcon in 2006 to bid and manage the renewal of a Navy contract. (Second Amended Counterclaim ("SAC") ¶ 21.) Arroyo and Sweeney allege that at all times, ASC and Halcon were aware that Sweeney had his own separate endeavors, including authoring and devising courses to teach threat protection to civilians. (SAC ¶¶ 23-24.)  In January of 2010, Arroyo referred Sweeney to MiraCosta College's Community Services Division for purposes of the two of them working together to provide a training program to the school. (SAC ¶ 28.) Subsequently, Sweeney and Arroyo provided MiraCosta College with a training program where Arroyo taught the security guard and firearms subjects and Sweeney taught the four day bodyguard module. (SAC ¶ 29.) This course began to be taught five or six times per year. (Id.)

In or around April of 2012, MiraCosta College requested that Sweeney and Arroyo provide a GI-Bill-funded protection training class for the College. (SAC ¶ 32.) According to Sweeney and Arroyo, this work had nothing to do with Sweeney's employment with ASC or Halcon. (Id.)  Sweeney did contact Halcon to see if ASC would be interested in being paid as a supplier to provide training facility premises for the course. (SAC ¶ 33.) Halcon agreed to rent the facility to Sweeney and Arroyo for the course. (Id.) Halcon also agreed to rent the facility so that Sweeney and Arroyo could create a promotional video for the MiraCosta College training class. (SAC ¶ 34.)

The SAC asserts the following claims against ASC, Halcon, and the Recce Group, Inc.: (1) declaratory relief; (2) copyright registration fraud; (3) civil conspiracy; (4) unfair competition under California common law; (5) unfair

competition - Cal. Bus. & Prof. Code § 17200; (6) tortious interference with contractual relations; (7) intentional interference with prospective economic relations; (8) negligent interference with prospective economic relations; (9) unjust enrichment; (10) fraud; (11) defamation; (12) trade libel; (13) breach of covenant of good faith and fair dealing; (14) [reserved]; (15) concealment/fraudulent inducement of contract; and (16) injunction.

## II. DISCUSSION

A.  Motion to Dismiss Second Amended Counterclaim

Counterdefendants move to dismiss all of the counterclaims except for the first counterclaim for declaratory relief. As discussed below, the Court denies the motion as to the eleventh counterclaim for defamation, grants the motion in part as to the second counterclaim for copyright registration fraud, and grants the motion as to the remaining counterclaims.

1. Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

1  conclusions, and a formulaic recitation of the elements of a cause of action will
2  not do." Id.  "[W]here the well-pleaded facts do not permit the court to infer
3  more than the mere possibility of misconduct, the complaint has alleged - but
4  it has not show[n] that the pleader is entitled to relief." Ashcroft v. Iqbal, 565
5  U.S. 662, 679 (2009) (internal quotation marks omitted).  Only a complaint that
6  states a plausible claim for relief will survive a motion to dismiss. Id.

        2.  Copyright Registration Fraud (Second Counterclaim)

        Counterclaimants allege that ASC and Halcon sought copyright registration on training materials that were authored by and belonged to Sweeney.  (SAC ¶ 51.)  According to the SAC, ASC/Halcon knew that the materials were not created pursuant to a work-made-for-hire and that ASC had no right to copyright the materials.  (SAC ¶ 53.)  Nevertheless, Counterclaimants allege, ASC and Halcon fraudulently filed for copyright registration of the materials in dispute.  (Id.)

        Counterdefendants argue that this claim should be dismissed because (1) fraud on the Copyright Office is not a stand-alone claim, and (2) Counterclaimants have failed to provide factual support for their assertion that they have been prejudiced by the alleged fraud.

        Although fraud on the Copyright Office is normally an affirmative defense to copyright infringement, not a cause of action, courts have allowed accused infringers to bring a claim for declaratory judgment that a copyright is invalid based on fraud on the Copyright Office. See, e.g., Gomba Music, Inc. v. Avant, 2014 WL 6669182, __ F. Supp. 3d __ (E.D. Mich. Nov. 24, 2014); Shirokov v. Dunlap, Grubb & Weaver, PLLC, 2012 WL 1065578 (D. Mass. March 27, 2012).  However, damages are not available on a claim for fraud on the Copyright Office. Shirokov, 2012 WL 1065578, at *31.

        The SAC alleges that Counterclaimants have suffered harm from the

alleged fraud on the Copyright Office and are entitled to compensation. (SAC ¶ 54.) The SAC also asks that the copyrights in dispute be invalidated. (Id.) To the extent that Counterclaimants seek damages on their claim for fraud on the Copyright Office, their claim is dismissed. However, the Court will allow the claim to proceed to the extent Counterclaimants seek declaratory relief.

As for Counterdefendants' argument that Counterclaimants have not established prejudice, the Court disagrees. The Ninth Circuit has explained, "Absent intent to defraud and prejudice, inaccuracies in copyright registration do not bar actions for infringement." S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1086 (9th Cir. 1989). If, as Counterclaimants contend, they are the rightful owners of the copyrights, they have been prejudiced if Counterdefendants misrepresented that the works were works for hire and thereby obtained the copyrights for themselves.

### 3. Civil Conspiracy (Third Counterclaim)

In their Third Counterclaim, Counterclaimants allege that Halcon, ASC, and Does conspired to wrongfully extort money from Counterclaimants and planned to destroy their business relationships with third parties and potential customers by knowingly making unfounded claims of rights to Counterclaimants' courses, course materials, and videos. (SAC ¶ 56.) Counterclaimants allege that in furtherance of the conspiracy, on October 19, 2012, Halcon had a conversation with Sweeney about the GI-Bill-funded courses at MiraCosta College. (SAC ¶ 58.) Halcon told Sweeney that Sweeney and Arroyo had a "good thing going." (Id.) Halcon then said that since Sweeney had made the promotional video for the training courses while he was working for ASC, Halcon would claim that the video was owned by ASC, "but that if Sweeney and Arroyo wanted to 'make things right,' (by paying money or giving him an interest in their business[)], there would 'be no

problems.'" (Id.)  Subsequently, Halcon fired Sweeney when he refused to accede to Halcon's demands.  (Id.)

To allege a claim of civil conspiracy, a plaintiff must allege (1) the formation and operation of the conspiracy; (2) the wrongful acts done in furtherance of the conspiracy; and (3) resulting damage. Mosier v. Southern California Physicians Ins. Exchange, 63 Cal. App. 4th 1022, 1049 (1998).  A civil conspiracy alone is not actionable unless a civil wrong has been committed resulting in damage.  Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510 (1994).

Counterclaimants have not sufficiently alleged the formation of a civil conspiracy.  Although Counterclaimants assert that Halcon, ASC, and unidentified Does formed a conspiracy, Counterclaimants admit that they do not know "who Halcon was working with at his controlled companies in this conspiracy to put Counterclaimants out of business." (Opp. at 17:19-21.)

Furthermore, Counterclaimants have not made out a plausible claim that a civil wrong was committed in furtherance of the alleged conspiracy. Counterclaimants state that Counterdefendants attempted to destroy Sweeney and Arroyo's business relationships with third parties and potential customers, however, the SAC provides no facts regarding these business relationships. Counterclaimants state that, at this time, "they are unable to determine the exact extent of the business relationships with third parties and potential customers Counter-Defendants attempted to destroy . . . ." (SAC ¶ 56.)[1]

Counterclaimants also allege that Counterdefendants engaged in wrongful extortion.  Again, there are insufficient facts to establish this claim. California courts have allowed a cause of action for the recovery of money obtained by extortion, menace, or duress, such as by wrongful threats of

---

[1] In Section II.A.5, infra, the Court discusses in greater detail the lack of facts regarding disrupted business relationships or potential business relationships.

criminal or civil prosecution. <u>Fuhrman v. Cal. Satellite Sys., Inc.</u>, 179 Cal. App. 3d 408, 426 (1986). Halcon allegedly indicated that "there would be no problems," if Arroyo and Sweeney gave him a share of their business or paid him. But Halcon's vague statement hardly rises to the level of a wrongful threat or duress. Furthermore, it is unclear what damages were proximately caused by the alleged attempted extortion.

    4.    <u>Unfair Competition (Fourth Counterclaim), Cal. Bus. & Prof. Code § 17200 (Fifth Counterclaim), and Unjust Enrichment (Ninth Counterclaim)</u>

Counterclaimants allege that Counterdefendants engaged in unfair competition in violation of California law and Cal. Bus. & Prof. Code § 17200 and were unjustly enriched by fraudulently obtaining a copyright on their promotional video and passing off as their own, the video, as well as other videos, photographs, course materials, and courses.

Counterdefendants argue that these claims as well as others are preempted by the Copyright Act. The Copyright Act preempts a state law cause of action if (1) the rights that a plaintiff asserts under state law are "rights that are equivalent" to those protected by the Copyright Act; and (2) the work involved falls within the "subject matter" of the Copyright Act. <u>Kodadek v. MTV Networks, Inc.</u>, 152 F.3d 1209, 1212 (9th Cir. 1998). A state law claim is not preempted, however, if it requires an additional element beyond the use of the copyrighted work. <u>Del Madera Prop. v. Rhodes and Gardner, Inc.</u>, 830 F.2d 973, 977 (9th Cir. 1987).

The Ninth Circuit has held that a "reverse passing off" claim is not preempted by federal patent or copyright laws because such a claim includes the requisite extra element – i.e., misappropriation of the fruits of another's labor. <u>Summit Machine Tooling Mfg. Corp. v. Victor CNC Systems, Inc.</u>, 7 F.3d 1434, 1441 (9th Cir. 1993). "Reverse passing off" occurs when someone

markets another's product as their own.  Id.

It appears that Counterclaimants are attempting to allege a "reverse passing off" claim, that is, that Counterdefendants have engaged in unfair competition and unjustly enriched themselves by claiming that they own videos, courses, and other materials belonging to Counterclaimants. Counterclaimants' efforts fall short, however, because they have not alleged facts showing that Counterdefendants actually marketed the videos, courses, and other materials to third parties.  Counterclaimants allege on "information and belief" only that "Counter-Defendants have received the benefit and success of using Counter-Claimants' videos, photographs, civilian protection Courses, and course materials, without ever having compensated Counter-Claimants for the use of these materials." (SAC ¶ 109.)  These allegations do not give rise to a plausible claim of reverse passing off.

### 5. Tortious Interference with Contractual Relations (Sixth Counterclaim), Intentional Interference with Prospective Economic Relations (Seventh Counterclaim), Negligent Interference with Prospective Economic Relations (Eighth Counterclaim)

In their sixth, seventh, and eighth counterclaims, Counterclaimants allege that Counterdefendants intentionally interfered with Counterclaimants' preexisting contracts with third parties and also interfered with prospective economic relations by representing to the public that ASC owns the copyrights to the materials in dispute and that Counterdefendants have kicked Counterclaimants off of ASC's property for wrongful conduct.  (SAC ¶¶ 86, 98.)

Again, the SAC is short on supporting facts.  Counterclaimants do not identify the existing contract(s) that have been disrupted, nor do they identify prospective business relationships that were derailed due to Counterdefendants' alleged actions.  Counterclaimants admit that they "are unable to determine the actual extent of business opportunities, business and income lost due to this wrongful, intentional interference until discovery is

completed." (SAC ¶¶ 87.)  Although the Court does not expect a detailed recitation of lost income in the pleadings, Counterclaimants must at least identify one preexisting contract and one prospective business relationship that were disrupted, and must set forth facts showing that Counterdefendants' actions resulted in the interference.

In their Opposition, Counterclaimants assert that it is clear from the SAC that the relevant contractual relationship and prospective economic relationship were those that Counterclaimants had with MiraCosta College.  The Court does not agree that the SAC is clear on this point.  There are no factual allegations that MiraCosta broke off the preexisting contract and/or refused to engage in any more business with Counterclaimants as a result of something Counterdefendants said or did.  Counterclaimants may add such facts if they choose to amend their Counterclaim.[2]

6. <u>Fraud (Tenth Counterclaim) and Concealment/ Fraudulent Inducement of Contract (Fifteenth Counterclaim)</u>

In their Tenth and Fifteenth Counterclaims, Counterclaimants allege that Halcon committed fraud by repeatedly telling Sweeney that it was not a problem for Sweeney to own and operate a side business relating to civilian protection and teaching courses in security and personnel protection. (SAC ¶¶ 113, 164.) According to the SAC, all along, Halcon knew his representations to Sweeney were false and that he planned on wrongfully taking and claiming ownership of Counterclaimants work and materials. (SAC ¶¶ 115, 166.) Counterclaimants allege that if they had know Halcon's representations were false, they either would not have expended the time, money and effort in marketing and teaching

---

[2] Counterdefendants contend that the claims for intentional interference with prospective economic relations and negligent interference with prospective economic relations are preempted by the Copyright Act. <u>Summit</u> suggests otherwise. 7 F.3d at 1442 (holding that claim for intentional interference with contract included requisite extra element and was therefore not preempted by federal law).

their courses (SAC ¶ 120 - fraud claim), or would not have used Counterdefendants as vendors and premises providers for their civilian protection courses and, in the case of Sweeney, would not have worked for Counterdefendants (SAC ¶ 168 - fraudulent inducement claim).

The Court finds that Counterclaimants' fraud claims fail to satisfy the pleading requirements of Iqbal and Twombly. Although malice, intent, knowledge, and other conditions of a person's mind may be alleged generally under Fed. R. Civ. P. 9(b), a plaintiff alleging fraud must still allege facts from which it can be inferred that the defendant's representations or assurances were false when made. See, e.g., Electric Prop. East, LLC v. Marcus & Millichap Co., 751 F.3d 990 (9th Cir. 2014) (holding that the complaint's factual allegations did not support a plausible inference that the defendants had the required specific intent to defraud). It is not sufficient to point to the defendant's subsequent failure to perform as promised. Jhaveri v. ADT Sec. Serv., Inc., 2012 WL 843315, at * 4 (C.D. Cal. March 6, 2012) (explaining that the allegation that defendant failed to perform its promises did not plausibly give rise to an inference that defendant never intended to honor the contract).

Other than the allegation that Halcon later acted inconsistently with his prior assurances that Sweeney could run his own side businesses, Counterclaimants do not allege facts from which it could be inferred that Halcon knew at the time that he made the assurances that they were false and that Halcon was secretly plotting all along to induce Sweeney into creating courses and materials so he could later lay claim to them. Therefore, the Court dismisses these counterclaims as well.

7. Defamation (Eleventh Counterclaim)

The SAC alleges that in or about May of 2014, Halcon told Michael Marin in person that Sweeney was a felon, had a dishonorable discharge from the

United States Navy, had stolen guns from ASC, and transported the stolen weapons across the border illegally, and that Sweeney's home had been raided by the Sheriff's department on two separate occasions. (SAC ¶ 126.) The SAC further alleges that all of these statements were false and put Sweeney in a false light. (SAC ¶ 127.) In addition, Counterclaimants allege on information and belief that Halcon made other damaging slanderous and disparaging false statements about Sweeney to third parties. (Id.)

To state a prima facie case of defamation under California law, a plaintiff must show (1) the intentional publication of (2) a statement of fact (3) that is false (4) unprivileged and (5) has a natural tendency to injure or which causes special damage. Smith v. Maldonado, 72 Cal. App. 4th 637, 645 (1999). "Publication need not be to the 'public' at large; communication to a single individual is sufficient." Id.

Counterclaimants have alleged sufficient facts to make out a plausible claim of defamation against Halcon. Sweeney allegedly published false facts about Sweeney to a third party (Marin), and those false facts regarding criminal history and activity would have a natural tendency to injure. Counterdefendants argue that the SAC lacks facts regarding the falsity of Halcon's alleged statements. However, given that Sweeney would know whether he was a felon, had stolen guns and transported them, and/or had his house raided, it is sufficient that Sweeney just asserts that the statements were false. No further details are necessary at this stage of the litigation. The motion to dismiss is denied as to the defamation claim against Halcon.

### 8. Trade Libel (Twelfth Counterclaim)

In their trade libel counterclaim, Counterclaimants allege that Halcon's statements to Marin strongly implied that Sweeney's business services could not be trusted and that Marin should not associate with Sweeney. (SAC ¶ 134.)

Counterclaimants also allege on information and belief that Halcon made other slanderous and disparaging false statements about Sweeney and his companies' services to other third parties. (SAC ¶ 136.) Upon information and belief, Counterclaimants allege that they have sustained actual damages in that Sweeney and his companies have lost business and profits. (SAC ¶ 139.) However, Counterclaimants state, "Sweeney is unable to determine the actual extent of lost business and profits until discovery is completed . . . ." (Id.)

Unlike classic defamation, trade libel is not directed at the plaintiff's personal reputation, but, rather, at the goods a plaintiff sells or the character of his business. Aetna Cas. and Sur. Co., Inc. v. Centennial Ins. Co., 838 F.2d 346, 351 (9th Cir. 1988). The elements of a trade libel claim are: (1) a publication, (2) which induces others not to deal with plaintiff, and (3) special damages. Id.

Counterdefendants argue that the alleged statements about Sweeney do not constitute trade libel because they do not disparage the goods or services provided by Sweeney. However, since the alleged statements pertain to criminal activity by Sweeney, particularly criminal activity involving guns, and Sweeney's business involves protection and security, the statements arguably disparage the quality of the services provided by Sweeney.

Counterclaimants' trade libel claim fails for the separate reason that the SAC does not allege facts showing that Counterclaimants suffered pecuniary damage as a result of the alleged trade libel. A claim for trade libel is based on pecuniary damage and lies only where such damage has been suffered. Leonardini v. Shell Oil Co., 216 Cal. App. 3d 547, 572 (1989). Although the SAC talks about statements Halcon made to Marin, it is unclear whether Marin was a potential customer and if so, whether Sweeney lost Marin's business as a result of what Halcon said. Accordingly, Counterclaimants' trade libel claim fails to state a claim.

9. <u>Breach of the Covenant of Good Faith and Fair Dealing (Thirteenth Cause of Action</u>

Counterclaimants allege that Halcon's claim to their promotional video and his attempt to obtain a piece of their business breached the covenant of good faith and fair dealing. The allegations of the SAC do not support a claim for breach of the covenant of good faith and fair dealing.

The covenant of good faith and fair dealing is implied to prevent a contracting party from engaging in conduct which frustrates the other party's rights to the benefits of the contract. <u>Love v. Fire Ins. Exchange</u>, 221 Cal. App. 3d 1136, 1153 (1990). The implied covenant should not, however, "be endowed with an existence independent of its contractual underpinnings." <u>Id.</u> "It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." <u>Guz v. Bechtel Nat., Inc.</u>, 24 Cal. 4th 317, 375 (2000).

Counterclaimants have failed to tie the implied covenant (not to claim rights to Sweeney's separate business interests) to any specific contractual obligation. The SAC claims that Counterclaimants and Counterdefendants "have always had a covenant between them that Counter-Claimants would be able to pursue their own separate and independent businesses in the field of civilian force protection and other businesses." (SAC ¶ 143.) It seems as if Counterclaimants are claiming that this alleged understanding was part of an oral contract. However, Counterclaimants do not allege facts regarding the formation or terms of this contract.

Counterclaimants also attempt to tie the implied covenant to the agreement between Counterclaimants and Counterdefendants regarding the rental of ASC's premises for the GI-Bill funded protection class. (SAC ¶ 149.) Counterclaimants allege that the implied covenant in this agreement prohibited Counterdefendants "from demanding additional moneys in violation of the agreement with Counter-Claimants." (<u>Id.</u>) However, according to the

allegations in the SAC, Counterdefendants did not demand additional moneys for the rental of the premises. In fact, the SAC alleges that the class was held on the ASC premises in late October of 2012, and Counterdefendants were paid $6,300 for rental of the premises and to pay Halcon for his time as an instructor. (SAC ¶¶ 42-43.)

Counterdefendants' claim of right to the courses and materials developed by Sweeney while he was in the employ of ASC, bears no relation to the purposes and terms of the agreement regarding rental of the ASC premises. The implied covenant cannot be used to create entirely different duties than those encompassed by the agreement. Therefore, Counterclaimants have failed to state a claim for breach of the covenant of good faith and fair dealing.

### 10. Injunction (Sixteenth Counterclaim)

In their sixteenth counterclaim, Counterclaimants seek a variety of injunctive relief based on their other counterclaims. As conceded by Counterclaimants, injunctive relief is a remedy, not a cause of action. See, e.g., Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) (dismissing cause of action of declaratory relief and injunctive relief because claim was more properly considered a remedy). Counterclaimants may include a request for injunctive relief in the "prayer for relief" section of their amended Counterclaim.

### B. Motion for Leave to File Amended Complaint

ASC and the Recce Group, Inc., seek to file an Amended Complaint. The motion was filed within the time prescribed by the Second Amended Scheduling Order entered in this case. [Doc. 48.] The proposed Amended Complaint (1) adds Recce as a plaintiff; (2) renames MiraCosta Community College District as a defendant and names as a new defendant Linda Kurokawa in her

official capacity as the Director of MiraCosta's Department of Community Services and Business Development; and (3) deletes eight claims; revises the copyright claims and the claims for common law unfair competition and violation of Cal. Penal Code § 496; and adds three new claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conversion.

Under Fed. R. Civ. P 15(a), leave to amend "shall be freely given when justice so requires." This policy is "to be applied with extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1979 (9th Cir. 1990). Factors to be considered in determining whether to grant leave to amend include (1) any bad faith or dilatory motive of the moving party; (2) any prejudice to the opposing party; (3) undue delay; and (4) futility of the proposed amendment. Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990). It is the consideration of prejudice to the opposing party that carries the greatest weight. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

Defendants argue that the motion for leave to amend should be denied because the amendment is sought in bad faith and after undue delay, and because Defendants will suffer prejudice. The Court disagrees. Plaintiffs seek to add Recce as a plaintiff in response to Recce being named as a counterdefendant on October 10, 2014. Plaintiffs wish to bring back in MiraCosta as a defendant and add Kurokawa as a defendant based on information learned during discovery in the fall of 2014. Although the three new claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conversion are not based on the discovery of new facts, the Court finds it reasonable that ASC's new counsel (substituted on October 7, 2014) reevaluated the Complaint and concluded that the Complaint needed to be revised and streamlined. (Supplemental Wright Decl. ¶ 3.) The Court concludes that there are legitimate reasons for amendment of the Complaint

and that Plaintiffs did not delay in bringing their motion to amend.

As for prejudice, Defendants argue that it would be unfair to allow amendment because of the discovery cutoff date of April 15, 2015, and the deadline for expert designations. Defendants also argue that the addition of new claims and defendants will cause delay and expense. The discovery deadlines are not an issue because the dates in the Second Amended Scheduling Order have been vacated. [Doc. 66.] Magistrate Judge Adler will reset the dates in light of this order.

This is not a situation where the litigation has progressed so far that it would be detrimental to the parties to alter the course of the action. Discovery is still ongoing. No depositions have been taken, and no summary judgment motions have been filed. To the extent that the amendment of the Complaint will cause the litigation to drag on longer, Defendants can hardly complain because the Court is also allowing them to amend their Counterclaim.

Defendants have not established the existence of undue delay, bad faith, futility, or prejudice. Therefore, the Court grants Plaintiffs' motion for leave to amend the Complaint.

## III.  CONCLUSION

For the reasons discussed above, Counterdefendants' motion to dismiss the Second Amended Counterclaim is **GRANTED IN PART** and **DENIED IN PART**. The second counterclaim (only to the extent it seeks damages), third counterclaim, fourth through tenth counterclaims, twelfth counterclaim, thirteenth counterclaim, fifteenth counterclaim, and sixteenth counterclaim are **DISMISSED** for failure to state a claim. The Court will allow Counterclaimants to file a Third Amended Counterclaim remedying the deficiencies identified in this Order. If Counterclaimants choose to file a Third Amended Counterclaim, they must do so within 30 days of the entry of this Order.

1 | The Court **GRANTS** the motion by ASC and Recce for leave to file an Amended Complaint. Plaintiffs shall electronically file the Amended Complaint within 7 days of the entry of this Order.

**IT IS SO ORDERED.**

DATED:  April 27, 2015

_____
BARRY TED MOSKOWITZ, Chief Judge
United States District Court