UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| AMERICAN SHOOTING CENTER, INC. a California Corporation, RECCE GROUP, INC., a California corporation, | Case No.:  13cv1847 BTM(JMA) |
|---|---|
| Plaintiffs, | **ORDER (1) GRANTING IN PART AND DENYING IN PART MOTION BY DEFENDANTS MIRACOSTA COLLEGE DISTRICT AND LINDA KUROKAWA FOR AN ORDER DISMISSING THE AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION; (2) DENYING JURISDICTIONAL DISCOVERY; AND (3) GRANTING IN PART AND DENYING IN PART MOTION BY SECFOR INTERNATIONAL, ET AL., TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, OR IN THE ALTERNATIVE, FAILURE TO STATE A CLAIM** |
| v. | |
| SECFOR INTERNATIONAL, et al., | |
| Defendants. | |

SECFOR INTERNATION, et al.,

Counter-Claimants

v.

AMERICAN SHOOTING CENTER, INC., et al.,

Counter-Defendants.

1

1    Defendants MiraCosta College District and Linda Kurokawa, in her official

2 capacity as Director of Community Services & Business Development for

3 MiraCosta College (collectively the "MiraCosta Defendants"), have filed a motion

4 for an order dismissing the First Amended Complaint ("FAC") for lack of subject

5 matter jurisdiction and failure to state a claim upon which relief can be granted.

6 Plaintiffs and the MiraCosta Defendants also filed a joint motion for determination

7 of a discovery dispute, which concerns the same Eleventh Amendment issues that

8 are raised by the MiraCosta Defendants' Motion to Dismiss.   Because the

9 discovery dispute raised dispositive issues, Magistrate Judge Adler ordered that

10 consideration of the joint motion was deferred until Judge Moskowitz evaluated the

11 arguments in connection with the motion to dismiss.

12    Defendants   Secfor   International,   Secfor   International   LLC,

13 HTPSCOURSE.COM, Absolute Security, Inc., Absolute Protection Group

14 Worldwide, APG, Keiko Arroyo, and Patrick Richard Sweeney aka Rick Sweeney

15 (collectively "Secfor Defendants") have filed a motion to dismiss the FAC for lack

16 of subject matter jurisdiction, or, in the alternative to dismiss for failure to state a

17 claim.

18    For the reasons discussed below, the MiraCosta Defendants' motion is

19 **GRANTED IN PART** and **DENIED IN PART**.   In addition, the Court denies

20 Plaintiffs' request for jurisdictional discovery.   The Secfor Defendants' motion is

2

1   also **GRANTED IN PART** and **DENIED IN PART**.

2

3   ## I. BACKGROUND

4   Plaintiffs are in the business of providing specialty-training courses for

5   security, medical procedures, and protection. (FAC ¶ 23.) Defendant Keiko Arroyo

6   was an employee of American Shooting Center ("ASC") from approximately

7   October of 2002 to February of 2005. (FAC ¶ 24.) Sweeney worked for ASC from

8   September 23, 2002 to April 13, 2004, and was hired again as a full-time employee

9   on September 20, 2006. (FAC ¶ 25.)

10   According to Plaintiffs, as part of his duties, Sweeney was responsible for

11   preparing training courses and training procedures for use by Plaintiffs in

12   conjunction with courses to be offered to the general public. (FAC ¶ 26.) The

13   courses included videos and photographs of training and various security and

14   medical scenarios as well as materials for class instruction. (Id.) ASC provided

15   Sweeney with two laptop computers on which to prepare the course materials.

16   (Id.)

17   While preparing the courses, Sweeney told Plaintiffs that he was working

18   with MiraCosta College so that the courses could be provided in conjunction with

19   MiraCosta College, utilizing MiraCosta College's ability to obtain GI bill funding for

20   students. (FAC ¶ 27.) Plaintiffs allege that Sweeney prepared all of the videos,

3

1  photographs and courses before October 19, 2012, while acting within the course

2  and scope of his duties as an employee of ASC.  (FAC ¶ 28.)

3      On or about October of 2012, Plaintiffs learned Sweeney was working with

4  Arroyo to provide training courses.  (FAC ¶ 31.)  Plaintiffs learned that Sweeney

5  and Arroyo had contacted Plaintiffs' customers and were providing training to many

6  of these customers.  (Id.)

7      On October 19, 2012, ASC terminated Sweeney.  (FAC ¶ 32.)  However,

8  Sweeney allegedly continued providing the same medical training courses that had

9  been provided by Plaintiffs to Plaintiffs' customers.  (FAC ¶ 33.)  On or about July

10  of 2013, Plaintiffs learned that Defendants had been using Plaintiffs' videos,

11  photographs, and courses on their various websites.  (FAC ¶ 34.)  ASC owns the

12  copyright to a video (Doc. 94-1), and Recce Group, Inc. owns the copyright to two

13  training bulletins (Doc. 94-2.).  Plaintiffs allege that Defendants have infringed their

14  copyrights by transmitting unauthorized copies of the works on their websites and

15  using class materials derived from those works in their courses.  (FAC ¶¶ 60-62.)

16      According to Plaintiffs, they are informed and believe that Sweeney has been

17  operating a competing business against Plaintiffs since 2007, while at the same

18  time receiving compensation and benefits from ASC.  (FAC ¶ 36.)

19      The FAC asserts the following claims: (1) Direct Infringement of Copyrights

20  (against all Defendants); (2) Secondary Infringement of Copyright (against all

4

Defendants); (3) Breach of Fiduciary Duty (against Sweeney); (4) Aiding and Abetting Breach of Fiduciary Duty (against all Defendants); (5) Unfair Competition under California Common Law (against Sweeney, Arroyo, MiraCosta College, and Linda Kurokawa); (6) Conversion (against Patrick Sweeney); and (7) California Penal Code § 496 – Receiving and/or Concealing Stolen Property (against all Defendants).

## II. <u>DISCUSSION</u>

**A.  <u>MiraCosta Defendants' Motion to Dismiss</u>**

The MiraCosta Defendants move to dismiss the FAC for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6) on the grounds that (1) the MiraCosta Community College District ("District") is a state entity that possesses Eleventh Amendment immunity; (2) Linda Kurokawa, in her capacity as Director of Community Services and Business Development for MiraCosta College, is also immune from suit under the Eleventh Amendment; and (3) Plaintiffs did not present a claim in compliance with the Government Claims Act, Cal. Gov't Code § 900 <u>et seq.</u>  As discussed below, the Court finds that the District is immune from suit under the Eleventh Amendment.  The Court also finds that Kurokawa is immune from suit for monetary damages but may be sued in her official capacity for injunctive relief.

5

13cv1847 BTM(JMA)

1    1.  Eleventh Amendment Immunity of the District

2        The Eleventh Amendment proscribes federal courts from hearing suits for

3    damages or injunctive relief brought against an unconsenting state agency.

4    Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).   To

5    determine whether an entity is an arm of the state, the Ninth Circuit examines the

6    following five factors:  (1) whether a money judgment would be satisfied out of state

7    funds; (2) whether the entity performs central government functions; (3) whether

8    the entity may sue or be sued; (4) whether the entity has the power to take property

9    in its own name or only the name of the state; and (5) the corporate status of the

10   entity.  Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 201 (9th

11   Cir. 1988).

12       In Mitchell, the Ninth Circuit looked to California law in applying the factors

13   and held that the Los Angeles Community College District was a state entity that

14   possessed Eleventh Amendment immunity from the plaintiff's section 1981, 1983,

15   and 1985 claims for damages and injunctive relief.  Id. at 201.  In subsequent cases

16   against community college districts within California, the Ninth Circuit has relied on

17   Mitchell in concluding that, absent waiver, community college districts are immune

18   from suit.

19       In Cerrato v. San Francisco Community College Dist., 26 F.3d 968 (9th Cir.

20   1994), the Ninth Circuit explained:

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

> We have held that community college districts are dependent instrumentalities of the state of California.  See Mitchell, 861 F.2d at 201-02.  Accordingly, we lack jurisdiction to hear Cerrato's claims against the district.

Id. at 972.   The Ninth Circuit did not reapply the five factors for determining whether an entity is an arm of the state.  The Ninth Circuit also noted, "Cerrato urges us to overrule circuit precedent with respect to this issue. In the absence of an en banc reversal or an intervening Supreme Court decision, however, we are bound by circuit law. [citations omitted]" Id. at 972 n. 15.

In Johnson v. Rancho Santiago Community College Dist., 623 F.3d 1011 (9th Cir. 2010), the Ninth Circuit found that the defendant community college district had waived its sovereign immunity by engaging in extensive proceedings in the district court.  However, the court noted:  "Absent a waiver, the District would be entitled to sovereign immunity because California community college districts constitute arms of the state entitled to sovereign immunity under the Eleventh Amendment.  See Cerrato v. S.F. Cmty. Coll. Dist., 26 F.3d 968, 972 (9th Cir. 1994)." Id. at 1021 n. 4.

Based on the Ninth Circuit precedent discussed above, district courts within California consistently hold that community college districts are entitled to Eleventh Amendment immunity without engaging in an independent analysis of the five Mitchell factors.  See, e.g., Young v. Reedley Community College, 2012 WL 253213, at * 4 (E.D. Cal. Jan. 26, 2012) (declining to apply five factor test and

7

1  explaining that Ninth Circuit law was clear that the community college defendants

2  were entitled to Eleventh Amendment immunity); Lavell v. San Diego Community

3  College Dist., 2008 WL 4712563 (S.D. Cal. Oct. 21, 2008) (granting motion to

4  dismiss for lack of jurisdiction based on Mitchell); Applied Professional Training,

5  Inc. v. Mira Costa College, S.D. Cal. Case No. 10cv1372 DMS(POR), Order

6  Granting Def.'s Mot. to Dismiss, November 30, 2010 [Doc. 39] (declining to apply

7  five-factor test and holding that MiraCosta Community College is entitled to

8  Eleventh Amendment immunity under Mitchell); Wasson v. Sonoma County Junior

9  College Dist., 4 F. Supp. 2d 893, 902 (N.D. Cal. 1997) ("There is nothing in Mitchell

10  or Cerrato to suggest that individual community college districts in California might

11  be treated differently for purposes of the Eleventh Amendment. . . . The Court is

12  bound to follow Mitchell and Cerrato and finds that the District is a state agency for

13  purposes of the Eleventh Amendment.")

14        Based on Mitchell and Cerrato, the Court finds that the District is immune

15  from suit under the Eleventh Amendment.  Plaintiffs argue that Mitchell's state law

16  analysis is erroneous.  (Opp. at 9:1-6.)  However, Mitchell is binding Ninth Circuit

17  precedent.

18        Next, Plaintiffs argue that Mitchell no longer controls because it was

19  undermined by subsequent legislation.  (Opp. at 9:14-15.)  Plaintiffs claim that

20  shortly after Mitchell, "the California Legislature enacted the Walter Stiern Act,

1  which changed the organization, structure, and funding for California community

2  college districts." (Opp. at 14-19.) However, Plaintiffs' claim of sweeping

3  legislative changes that would change the Eleventh Amendment analysis is not

4  supported by the identification of specific provisions that were enacted after

5  Mitchell and that bear upon the Mitchell factors.

6  In fact, the Walter Stiern Act is comprised of Part 43 of Title 3, Division 7, of

7  the Education Code only, not all of the Education Code provisions relating to

8  community colleges. Cal. Educ. Code § 70900.5 ("This part shall be known, and

9  may be cited, as the 'Walter Stiern Act.'"). The renaming of Part 43 as the Walter

10  Stiern Act was provided for in Stats. 1990, c. 1587 (S.B. 1570). This 1990

11  legislation did not make any significant changes to the organization, structure, or

12  funding of the California community college districts.[1]

13  Contrary to their claims, Plaintiffs have not made *factual* allegations that the

14  relationship between the California community college districts and the state has

15  changed since Mitchell so that reexamination of the immunity issue is warranted.

16

17

18  [1] Although Plaintiffs cite to various provisions of the California Education Code in their opposition, they do not specify which provisions predated Mitchell. For example, Plaintiffs point to Cal. Educ. Code §§ 72500 and 72502, which Plaintiffs erroneously describe as part of "the Walter Stiern Act," and explain that under these provisions, the District is liable for its own debts,

19  and all claims for money or damages against it are governed by the Tort Claims Act. (Opp. at 13:10-12.) However, both § 72500 and § 72502 (added by Stats.1976 , c. 1010, § 2) preexisted

20  Mitchell.

13cv1847 BTM(JMA)

See Dollonne v. Ventura Unified Schood Dist., 440 Fed. Appx. 533, 534 (9th Cir. 2011) (explaining that discovery on the issue of immunity was unwarranted because "Dollone makes no factual allegations that the relationship between California school districts and the state has changed in the ensuing years.") Therefore, the Court follows Mitchell and finds that Plaintiffs' suit against the District is barred under the Eleventh Amendment.

2. Immunity of Kurokawa

Kurokawa is named as a defendant "in her capacity as Director of Community Services and Business Development for MiraCosta College." (FAC ¶ 15.)

Because Kurokawa has been sued in her official capacity, she shares in the District's Eleventh Amendment immunity as to claims for retroactive monetary relief. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102-103 (1984). However, the Eleventh Amendment does not bar suits for prospective declaratory or injunctive relief against state officials in their official capacity.  Ex Parte Young, 209 U.S. 123, 155-56 (1908); Rounds v. Oregon State Bd. Of Higher Educ., 166 F.3d 1032, 1036 (9th Cir. 1999).

Accordingly, the Court grants the motion to dismiss as to claims for retroactive monetary relief against Kurokawa, but denies the motion as to Plaintiffs'

10

1 claims for prospective injunctive relief.[2]

2

3     3.  Plaintiffs' Request for Jurisdictional Discovery

4        In the Joint Motion for Determination of Discovery Dispute [Doc. 87] and their

5 Opposition, Plaintiffs request jurisdictional discovery to oppose the MiraCosta

6 Defendants' motion to dismiss. Plaintiffs specifically request the opportunity to

7 depose Charlie Ng, the District's Vice-President for Business and Administrative

8 Services. The MiraCosta Defendants submitted the declaration of Ng in support

9 of their motion to dismiss. Plaintiffs argue that since the MiraCosta Defendants

10 chose to make Mr. Ng's testimony an issue in this case, Plaintiffs have a right to

11 cross-examine Mr. Ng.

12        However, the Court did not rely on the declaration of Mr. Ng in making its

13 ruling. The Court found that the District was immune under the Eleventh

14 Amendment based on Ninth Circuit precedent, not facts presented by Mr. Ng.

15 Therefore, the Court overrules Plaintiffs' evidentiary objections to Mr. Ng's

16 declaration and denies Plaintiffs' request for jurisdictional discovery. As discussed

17

18 ―――――――――――――

19     [2] The requirements of California's Government Claims Act only apply to claims for money or damages, and generally do not apply to claims for declaratory or injunctive relief.

20 Hart v. Alameda County, 76 Cal. App. 4th 766, 780 (1999). Therefore, it appears that Plaintiffs' claims for prospective injunctive relief against Kurokawa are not barred by Plaintiffs' failure to comply with the Claims Act.

11

13cv1847 BTM(JMA)

1   above, Plaintiffs have not come forward with facts warranting discovery.  <u>Dollonne</u>,

2   440 Fed. Appx. at 534.

3        It is unclear whether Mr. Ng has knowledge relevant to the surviving claims

4   for prospective injunctive relief against Kurokawa.[3]  Therefore, the Court denies

5   the MiraCosta Defendants' request for a protective order.

6

7   **B. <u>Secfor Defendants' Motion to Dismiss</u>**

8        The Secfor Defendants have filed a motion to dismiss the FAC for lack of

9   subject matter jurisdiction or, in the alternative, to dismiss the FAC for failure to

10  state a claim.  The Court denies the motion to dismiss for lack of subject matter

11  jurisdiction and grants in part and denies in part the motion to dismiss for failure to

12  state a claim.

13

14       1.  <u>Subject Matter Jurisdiction</u>

15       The Secfor Defendants argue that the Court lacks subject matter jurisdiction

16  over this action because the evidence establishes that Plaintiffs do not have valid

17  _____

18

19       [3]   Plaintiffs argue that Mr. Ng's testimony is pertinent to determine whether Kurokawa
     was acting on behalf of the State or the District for purposes of immunity.  Plaintiffs are mistaken.

20  Under Ninth Circuit law, the District is an arm of the state.  There are no cases suggesting that
     California community college districts act on behalf of the state in some situations and act as
     municipal corporations or other political subdivisions in others.   Therefore, jurisdictional
     discovery is also denied with respect to Kurokawa.

12

13cv1847 BTM(JMA)

1   claims for copyright infringement.  However, Defendants' argument pertains to the

2   merits of Plaintiffs' copyright claims, not the existence of subject matter jurisdiction.

3   "Subject matter jurisdiction does not fail simply because the plaintiff might be

4   unable to ultimately succeed on the merits."  Litecubes, LLC v. Northern Light

5   Products, Inc., 523 F.3d 1353, 1360 (9th Cir. 2008).

6       In Litecubes, the Ninth Circuit held that subject matter jurisdiction existed

7   over the plaintiff's patent law claims even though, according to the defendant, the

8   plaintiff had failed to prove that the defendant sold or offered to sell products in the

9   United States or imported products into the United States:  "This jurisdiction does

10  not depend on whether Litecubes is able to succeed on the merits in proving all of

11  the elements of patent infringement that it alleged in the complaint."  Id. at 1366.

12  Similarly, here, Defendants' arguments regarding the invalidity and/or

13  unenforceability of the copyrights at issue and lack of evidence of infringement do

14  not support dismissal for lack of subject matter jurisdiction.

15

16      2.  Failure to State a Claim

17        a. Copyright Infringement

18      To establish copyright infringement, a plaintiff must prove:  (1) ownership of

19  a valid copyright; and (2) copying of constituent elements of the work that are

20  original.  L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir.

13

1  2012).

2       Plaintiffs allege that they own copyrights to the videos, photographs and

3  course materials, including the works identified in Exhibits A and B to the FAC.

4  (FAC ¶ 56.)  Plaintiffs also request that the Court take judicial notice of Certificates

5  of Copyright Registration of a protection course video (screen shots of which are

6  included in Ex. A to the FAC) and two training bulletins (attached as Ex. B to the

7  FAC).  (RJN, Exs. 1-3.)  On a motion to dismiss, courts may take judicial notice of

8  matters of public record outside the pleadings.  MGIC Indem. Corp. v. Weisman,

9  803 F.2d 500, 504 (9th Cir. 1986).  Certificates of Copyright Registration are the

10 types of documents that may be judicially noticed under Fed. R. Evid. 201.  Warren

11 v. Fox Family Worldwide, Inc., 171 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001).

12 Therefore, the Court grants Plaintiffs' request for judicial notice.

13      Plaintiffs have sufficiently established ownership of the copyrights at issue.

14 Certificates of Copyright Registration are prima facie evidence of the validity of

15 copyright and the facts therein.  17 U.S.C. § 410(c).

16      Defendants argue that the video was not a "work for hire" and that the

17 copyright was fraudulently obtained.  However, this argument raises factual issues

18 that are better suited for a motion for summary judgment.

19      Defendants also argue that the training bulletins consist of generic topics and

20 descriptions of courses and lack the originality to obtain copyright protection.  The

14

Court disagrees.  As explained by the Supreme Court, "the requisite level of creativity is extremely low; even a slight amount will suffice."  <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.</u>, 499 U.S. 340, 345 (1991).  Even a directory that contains only facts possesses the requisite degree of creativity if it features an original selection or arrangement. <u>Id.</u> at 348.  The bulletins describe the courses, explain who should take the courses, and list representative topics that are covered by the courses.  The bulletins, in their selection of language and arrangement, certainly have a level of creativity that is no "so trivial as to be virtually nonexistent." <u>Feist</u>, 499 U.S. at 359.

With respect to the video, Plaintiffs have also sufficiently alleged infringement.  According to Plaintiffs, Defendants made the video available on their websites.  (FAC ¶¶ 60, 62.)

However, Plaintiffs have not alleged facts establishing infringement of the copyrights to the bulletins.  The FAC is ambiguously worded, but it appears that Plaintiffs are complaining not that the bulletins themselves were reproduced or made available to the public by Defendants, but that "course materials derived" from the bulletins were in Defendants' classrooms.  (FAC ¶ 62.)  Copyright protection does not extend to any idea or concept "regardless of the form in which it is described, explained, illustrated, or embodied in such work."  17 U.S.C. § 102(b).  For a derivative work to infringe a copyright, "the infringing work must

15

incorporate in some form a portion of the copyrighted work." <u>Litchfield v. Spielberg</u>, 736 F.2d 1352, 1357 (9th Cir. 1984), <u>cert. denied</u>, 470 U.S. 1052 (1985).  To the extent Defendants' courses or course materials merely covered topics or ideas mentioned in the bulletins, Plaintiffs' copyrights were not infringed.

Accordingly, the Court denies the motion to dismiss Plaintiffs' direct infringement claim to the extent it pertains to the copyrighted video, but grants the motion to the extent it pertains to the bulletins.  Plaintiffs have leave to amend their direct infringement claim to provide supporting facts regarding the bulletins.

### b.  Secondary Infringement

Plaintiffs allege that Defendants are liable as contributory infringers or vicarious infringers.  A defendant is a contributory infringer if he or she (1) has knowledge of a third party's infringing activity; and (2) induces, causes, or materially contributes to the infringing conduct.   <u>Perfect 10 v. Visa Int'l Serv. Assoc.</u>, 494 F.3d 788, 795 (9th Cir. 2007).   To state a claim for vicarious copyright infringement, a plaintiff must allege that the defendant (1) has the right and ability to supervise the infringing conduct; and (2) a direct financial interest in the infringing activity.  <u>Id.</u> at 802.

The FAC does not allege sufficient facts to support a plausible claim for secondary infringement.  The FAC generally alleges:

16

1
2
3

> Users of Defendants' websites and classes have infringed, and continue to infringe, Plaintiffs' copyrights, including without limitation those copyrighted works identified in Exhibit A, by reproducing and distributing works owned by Plaintiffs through sharing of the files and materials without authorization from Plaintiffs, or right under law, in violation of the Copyright Act, 17 U.S.C. § 106.

4
5

(FAC ¶ 69.) The FAC does not allege any specific facts about users of Defendants'

6

websites copying or distributing the video. The mere possibility of infringement by

7

third parties is not sufficient to support a claim for secondary infringement. <u>See,</u>

8

<u>e.g.</u>, <u>Luvdarts, LLC v. AT&T Mobility, LLC</u>, 710 F.3d 1068, 1072 (9th Cir. 2013)

9

(explaining that plaintiff must allege actual knowledge of specific acts of

10

infringement to state a claim for contributory copyright infringement); <u>Viesti Assoc.,</u>

11

<u>Inc. v. Pearson Educ., Inc.</u>, 2013 WL 4052024, at * 7 (D. Col. Aug. 12, 2013)

12

("Without factual allegations describing instances of Pearson encouraging or

13

promoting third parties to infringe Viesti's photographs, the complaint does not

14

permit the Court to infer more than the mere possibility of Pearson's misconduct.

15

However, allegations that are merely consistent with the possibility that Pearson is

16

liable fail to state a plausible claim for relief.")

17

Therefore, the Court grants Defendants' motion to dismiss as to Plaintiffs'

18

secondary infringement claim. Plaintiffs may amend this claim to provide factual

19

allegations regarding secondary infringement.

20

//

17

1                    c.  Breach of Fiduciary Duty against Sweeney

2          Defendants move to dismiss the breach of fiduciary duty claim against

3   Sweeney on the ground that employees who are not officers or directors generally

4   owe no fiduciary duty to their employees.  In their opposition, Plaintiffs explain that

5   although a traditional fiduciary relationship does not exist between an employee

6   and employer, all employees owe a duty of loyalty to their employers.  Plaintiffs

7   ask the Court to construe their claim for breach of fiduciary duty as a claim for

8   breach of the duty of loyalty.

9          Under California law, although an employee may seek other employment

10  and may even make some preparations to compete while still employed by his

11  employer, the employee may not transfer his loyalty to a competitor.  Huong Que,

12  Inc. v. Luu, 150 Cal. App. 4th 400, 414 (2007).  "An employee who has any

13  business to transact on his own account, similar to that intrusted to him by his

14  employer, shall always give the preference to the business of the employer."  Cal.

15  Lab. Code § 2863.   "The duty of loyalty is breached, and the breach may give rise

16  to a cause of action in the employer, when the employee takes action which is

17  inimical to the best interests of the employer."  Huong Que, 150 Cal. App. 4th at

18  414 (internal quotation marks and citation omitted).

19         It appears that Plaintiffs can state a claim for breach of the duty of loyalty

20  against Sweeney.  Plaintiffs allege that while Sweeney was still in ASC's employ,

13cv1847 BTM(JMA)

Sweeney contacted Plaintiffs' customers and was training some of these customers. (FAC ¶ 31.) Plaintiffs also allege that Defendants were using Plaintiffs' videos, photographs, and courses in conjunction with Defendants' business. (FAC ¶ 33.) These allegations, if true, would support a claim for breach of the duty of loyalty.

Accordingly, although the Court dismisses Plaintiffs' breach of fiduciary duty claim, Plaintiffs may re-plead their claim as a claim for breach of the duty of loyalty.

### d. Aiding and Abetting Breach of Fiduciary Duty

Because the Court dismisses the breach of fiduciary duty claim, the Court also dismisses Plaintiffs' claim for aiding and abetting breach of fiduciary duty. Plaintiffs may re-plead this claim as one for aiding and abetting breach of the duty of loyalty. Plaintiffs have alleged that Sweeney was working with Arroyo to provide competing courses during the time of his employment and that Sweeney and Arroyo had contacted Plaintiffs' customers. (FAC ¶ 31.) These allegations are sufficient to establish aiding and abetting by Arroyo.[4]

---

[4] It appears that Plaintiffs' aiding and abetting claim against the MiraCosta Defendants is based on MiraCosta College presenting the courses <u>after</u> Sweeney violated his duty of loyalty. The Court does not state an opinion at this time whether these allegations are sufficient to establish aiding and abetting against Kurokawa, the remaining MiraCosta Defendant.

1          e.  Unfair Competition under California Common Law

2          The common law tort of unfair competition provides an equitable remedy for

3  the "passing off" of one's goods as those of another."  Bank of the West v. Superior

4  Court, 2 Cal. 4th 1254, 1263 (1992).    As explained by the California Court of

5  Appeal:

> The purpose of the equitable doctrine is to prevent unfair competition
> through misleading or deceptive use of a term exclusively identified
> with the claimant's product and business (see Academy of Motion
> Picture, etc. v. Benson, supra., 15 Cal.2d 685, 689-690), affording
> judicial protection whenever "the name and the business [through
> continued association] become synonymous in the public mind; and
> submerges the primary meaning of the name ... in favor of its meaning
> as a word identifying that business." (Visser v. Macres, (1963) 214
> Cal.App.2d 249, 253 [29 Cal.Rptr. 367].) The crucial element is the
> mental association in the buyer's mind between the mark used in
> connection with the product and a single source of origin.

12  North Carolina Dairy Foundation, Inc. v. Foremost-Mackesson, Inc., 92 Cal. App.

13  3d 98, 108 (1979).

14          Plaintiffs allege that the MiraCosta Community College District represented

15  to the public that the High Threat Protection Specialist program would be

16  conducted at the "Alpine Training Center," located at 19150 High Glen Road,

17  Alpine, CA  91901.  (FAC ¶ 95.)  Plaintiffs further allege that the representation

18  was false and that the Alpine Training Facility is used by ASC and the Recce Group

19  for their own training programs.  (FAC ¶ 96.)  Plaintiffs claim that Sweeney and

20  Arroyo aided and abetted the misrepresentation by failing to correct the false

1  information found in the Work Skills Program Bulletin.  (FAC ¶ 98.)

2      However, there is no allegation that the "Alpine Training Center" acquired a

3  secondary meaning such that the public associates the Alpine Training Center with

4  Plaintiffs.  Therefore, the erroneous information does not necessarily rise to the

5  level of Defendants passing off their training course as that of Plaintiffs.

6      In their opposition, Plaintiffs also point to allegations that Defendants used

7  Plaintiffs' videos, photographs and courses on their various websites, and used

8  American Shooting Center's business address as its California business address

9  without Plaintiffs' knowledge or consent. But misappropriation of intellectual

10  property is not the same thing as causing public confusion regarding the source of

11  goods or services.   As for the business address, it is unclear under what

12  circumstances Defendants used ASC's business address and whether it was likely

13  to cause confusion to the public.

14      Plaintiffs have not alleged sufficient facts to support a claim for unfair

15  competition under California law.  Therefore, this claim is also dismissed with leave

16  to amend.

17

18          f.  Conversion against Patrick Sweeney

19      Plaintiffs allege that at the time of Sweeney's termination, he had in his

20  possession two laptop computers purchased by ASC.  (FAC ¶ 101.)  Sweeney

13cv1847 BTM(JMA)

used these computers to develop and store the training courses.  (Id.)   Upon Sweeney's termination, ASC requested the return of the two laptop computers, but Sweeney refused to the return the laptops, claiming that they no longer existed. (FAC ¶ 102.)  According to Plaintiffs, they were harmed by Sweeney's failure to return the laptops because ASC lost the benefit of the computers and no longer had access to the teaching materials and programs developed by Sweeney for Plaintiffs.  (FAC ¶ 103.)

Under California law, the tort of conversion has three elements: (1) ownership or right to possession of property; (2) wrongful disposition of the property right; and (3) damages.  Kremen v. Cohen, 337 F.3d 1024, 1029 (9th Cir. 2003).   The tort of conversion not only applies to tangible objects such as computers, but also to intangible property or intellectual property, such as customer information or business plans, that has a connection to a document.  See Terarecon, Inc. v. Fovia, Inc., 2006 WL 1867734 (N.D. Cal. July 6, 2006) (finding that Plaintiff sufficiently alleged conversion of computer code, confidential information concerning contracts with customers, business plans, and product plan).

Plaintiffs have sufficiently stated a claim for conversion of the laptops and the teaching materials and programs.  Therefore, Defendants' motion is denied as to this claim.

22

g.  California Penal Code § 496

Plaintiffs allege that Defendants violated Cal. Penal Code § 496 by using the courses developed by Sweeney for Plaintiffs, refusing to return the courses, concealing the courses, and refusing to remove copyrighted materials from their websites.  (FAC ¶ 106.)  In their Opposition, Plaintiffs also rely on their allegations regarding the two laptop computers and the intellectual property contained on them.  (Opp. at 17:28-18:3.)

Cal. Penal Code § 496(a) provides:

> Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170.

Section 496(c) provides that any person who has been injured by a violation of subdivision (a) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees.

"Anything that can be the subject of theft can also be property under section 496."  People v. Gopal, 171 Cal. App. 524, 541 (1985).  The laptop computers are certainly property that can be the subject of theft and were allegedly concealed and withheld by Defendants.  It appears that the documents on the computers may also be deemed property subject to theft under the statute.  See, e.g., People v.

23

13cv1847 BTM(JMA)

1   Dolbeer, 214 Cal. App. 2d 619, 623 (1963) (holding that list of telephone

2   subscribers was property subject to theft, embezzlement, or receiving).

3        Accordingly, the Court denies Defendants' motion to dismiss as to this claim.

4

5             **III.  CONCLUSION**

6        For the reasons discussed above, the MiraCosta Defendants' motion to

7   dismiss [Doc. 81] is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs' claims

8   against the MIraCosta Defendants are **DISMISSED WITH PREJUDICE** with the

9   exception of Plaintiffs' claims against Linda Kurokawa, in her official capacity, for

10   prospective injunctive relief.

11        The Court rules on the joint motion for discovery [Doc. 87] as follows:  the

12   Court denies Plaintiffs' request for jurisdictional discovery and also denies the

13   MiraCosta Defendants' request for a protective order prohibiting Plaintiffs from

14   deposing Charlie Ng.

15        The Secfor Defendants' motion to dismiss [Docs. 78, 79] is **GRANTED IN**

16   **PART** and **DENIED IN PART**.  The motion is granted as to the first cause of action

17   (copyright infringement) to the extent it alleges infringement of Plaintiffs' copyrights

18   to the bulletins, second cause of action (secondary infringement), third cause of

19   action (breach of fiduciary duty), fourth cause of action (aiding and abetting breach

20   of fiduciary duty), and fifth cause of action (unfair competition under California

13cv1847 BTM(JMA)

common law).  The motion is denied as to the sixth cause of action (conversion) and seventh cause of action (Cal. Penal Code § 496).  The Court grants Plaintiffs leave to file a Second Amended Complaint ("SAC") remedying the defects identified above.  Plaintiffs must file their SAC within 30 days of the entry of this Order.  If Plaintiffs do not file a SAC within 30 days, Defendants must file their answer to the FAC within 20 days after expiration of the 30 days.  If Plaintiffs file a SAC, Defendants shall respond to the SAC within 30 days of the filing of the SAC.

**IT IS SO ORDERED.**

Dated:  March 28, 2016

Barry Ted Moskowitz, Chief Judge
United States District Court

25

13cv1847 BTM(JMA)